Vester Keeter v. Commissioner.
Keeter v. Commissioner
Docket No. 44727.
United States Tax Court
T.C. Memo 1954-77; 1954 Tax Ct. Memo LEXIS 169; 13 T.C.M. (CCH) 572; T.C.M. (RIA) 54183; June 25, 1954, Filed J. Bernie Lewis, Esq., and Homer L. Swenson, Esq., Mountain Grove, Mo., for the petitioner. Frank C. Conley, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined a deficiency of $12,113.89 in the petitioner's income tax for the year 1946. The issues presented are the correctness of the respondent's action in determining (1) that no part of the proceeds received by the petitioner from the sale of standing white oak timber and stave bolts was taxable as a long-term capital gain from the sale of good will, and (2) that no portion of the compensation received by the petitioner was taxable as a long-term capital gain from the sale of good will. Findings of Fact Some of *170 the facts have been stipulated and are found accordingly. The petitioner resides in Bradleyville, Missouri. He filed his 1946 Federal income tax return with the collector of internal revenue for the sixth district of Missouri. The petitioner has been in the business of buying and cutting timber to be sawed into barrel staves for over twenty years. Prior to 1943 he purchased and cut timber for other stave-mill operators. In 1943 he constructed a stave-mill for himself at Bradleyville, Missouri. This was the first such mill in Taney County. As a result of his dealings with the people owning timberlands, the petitioner had gained their confidence and built up an enviable relationship with his customers. He purchased practically all the timber sold in the Taney County area from 1943 to 1946. The staves that petitioner manufactured were sold to barrel makers who produced barrels used by whisky distilleries for the storage of whisky. During 1946 the sale price of staves was controlled by the Office of Price Administration. Bidding for staves was highly competitive, and those who desired staves had to buy the facilities to make them because the costs of manufacturing them were in excess *171 of the O.P.A. ceiling price. As a result of these conditions, petitioner in 1946 sold his inventory of staves, timberlands and mill equipment and went to work for the J. M. Bryant Company, sometimes hereinafter referred to as Bryant Co., manufacturers of tight cooperage stock. The following bill of sale was executed by petitioner to effectuate the sale of his timberlands and staves: "For and in consideration of the sum of $17918.48 (seventeen thousand nine hundred eighteen dollars and forty eight cents) receipt of which is hereby acknowledged I hereby sell transfer and convey unto J. M. Bryant Company of Clarksville, Arkansas the following tracts of standing white oak timber situate in Taney and Ozark Counties Missouri and white oak stave bolts in the vicinity of Bradleyville, Mo. as follows: "T. B. Blankenship (Ozark Co.)
600 acres
Homer Bookout (Taney Co.)
200
Ezra Davidson (Taney Co.)
40
Bill Mahr (Taney Co.)
200
Ed Rosner (Taney Co.)
480
Bill Brown (Taney Co.)
280
W. A. Floyd (Taney Co.)
160
"I estimated the above lands to have 210,000 board feet of white oak timber suitable for bourbon staves. Value placed on this timber is $12645.48. "21,092 white oak stave bolts at
25 cents
$5273.00
*172 "I hereby certify the above standing timber and stave bolts are free from and incumbrance and that I have full right to sell the same. "Dated and signed at Bradleyville, Mo. this 14th day of January, 1946. "/s/ Vester Keeter, Vester Keeter "Witness: /s/ L. W. Clave" The cost to petitioner of the timber rights on the seven tracts of land was $2,195 and the cost of the staves was $940. Bryant Co. did not know what the timberlands and staves cost the petitioner. The timber tracts had not been held by the petitioner for more than six months. On the same day, January 14, 1946, the petitioner sold Bryant Co. his entire stavemill business and all equipment. The gain from this sale has been reported and taxed as a capital gain, and there is no controversy here as to that gain. Bryant Co. and the petitioner also entered into a contract of employment as follows: "Lawrence H. Bradley, Vice President "Leslie E. Bryant, Vice President and Gen'l. Mgr. "J. M. BRYANT COMPANY Incorporated Manufacturers of TIGHT COOPERAGE STOCK Clarksville, Arkansas January 14, 1946 "Mr. Vester Keeter, Bradleyville, Mo.
"Dear Mr. Keeter: "This is to confirm agreement made with you today in *173 your office at Bradleyville, Missouri in which you agree to conduct the manufacturing of mill run bourbon white oak staves for us or our assigns. You agree to give this business your undivided attention and to take no part nor have any interest in the production of staves except staves made for us. "You agree to diligently execute this business thereby producing as many staves as is consistent, and to produce said staves at as low cost as reasonably possible and to be governed by us as to prices to pay for timber and other factors entering into the cost of staves so manufactured. "We agree to pay you for supervision of this business $100.00 (one hundred dollars) per thousand, 4 1/2inch average width basis net staves, for the bourbon staves, cut thick enough to finish 15/16inch thickness when kiln dried and planed on one side. Staves are to be cut 36inch long and cut-offs will be taken down to 30inch length at above price, same average width. And for the oil grade staves that develop in the manufacture of said bourbon staves we will pay you $10.00 (ten dollars) per thousand for some, 4 1/2inch average width basis. "Six months from this date either party will have the right to *174 cancel this agreement by giving thirty days notice in writing to the other party of his or their desire to cancel same and both parties are bound to finish up the working of such timber as is on hand at the time such notice is given. "You have given us a bill of sale for certain stave machinery and when this agreement is terminated as to performance you have the right to repurchase said machinery at the same price we paid you less depreciation. "This is written in duplicate and your signature in the space provided below will form sufficient contract between us. "The above is correctly stated and accepted by me "Yours very truly, /s/ Leslie E. Bryant Vice Pres. & Gen'l Mgr. "/s/ Vester Keeter, Vester Keeter" The above employment contract was extended on March 25, 1946, by the following agreement: "J. M. Bryant, President A. D. Bryant, Secy.-Treas. Lawrence H. Bradley, Vice President Leslie E. Bryant, Vice President and Gen'l. Mgr. "J. M. BRYANT COMPANY Incorporated Manufacturers of TIGHT COOPERAGE STOCK Clarksville, Arkansas March 25, 1946 "Mr. Vester Keeter, Bradleyville, Missouri
"Dear Mr. Keeter: "By mutual agreement with you, we are extending the time *175 for termination of contract with you dated January 14, 1946 for a period of one year from termination date of original contract. This does not in any way change any of the terms and conditions of the existing contract between us and neither does it change the conditions under which the contract may continue to operate after the termination date. "Yours very truly, /s/ Leslie E. Bryant V. Pres. & Gen. Mgr. "LEB:G "I hereby agree to and accept the extension of contract as outlined above. "/s/ Vester Keeter "Witness: /s/ L. W. Clave" At the time the parties entered into the foregoing bill of sale of the timber and staves and the original contract of employment there had been no mention made by either of them as to any sale or purchase of good will. In executing such instruments neither of them considered that a sale or purchase of good will was being made. The petitioner became an employee of Bryant Co. and took complete charge of the mill operation. He bought timber in his own name for his employer and received a salary of $40,999.76 as compensation for personal services rendered in 1946. Withholding taxes and social security contributions were deducted from petitioner's *176 salary checks. Bryant Co. did not obtain any customers' lists from the petitioner nor use the petitioner's name in any manner in selling its barrels. The petitioner did not sell any of the staves produced for Bryant Co. It sold its entire production of staves to National Distillers Products Corporation. Bryant Co. entered into similar contracts with other stave-mill operators during 1945 and 1946. At the conclusion of the contract of employment petitioner repurchased the stave mill. While he was working for Bryant Co., the petitioner operated a cheese factory for his own account. Opinion The petitioner contends that the excess of the amount he received from the sale of staves and timber rights over his cost thereof, or $14,783.48, was consideration for the sale of the good will of his stave manufacturing business and taxable as a long-term capital gain. He also contends that the $40,999.76 he received from Bryant Co. as compensation under his contract of employment was also consideration for the sale of good will of his business and taxable as a long-term capital gain. [1]
*177 Respondent contends tha the total amount received from the sale of the timber rights and staves should be treated as ordinary income from the sale of property held less than six months with no good will being involved and that the amount received under the employment contract was merely income received for personal services rendered. The petitioner desires to segregate a portion of the proceeds he received from the sale of the timber rights and timber as reimbursement for the sale of the good will of his business. Good will refers to elements of value in the business of a going concern. Good will is "'the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessity, or even from ancient partialities or prejudices.'" . The bill of sale, which is included *178 in our findings, gives no indication that either petitioner considered he was selling good will or that Bryant Co. thought it was buying good will. It is merely a bill of sale of specified timber tracts and timber for bourbon staves. Leslie Bryant, who carried out the negotiations for Bryant Co., appeared as a witness in the proceeding. He testified that the high price his company paid resulted from the prevailing competitive market, that he had no knowledge of the cost of the property to petitioner, and that he considered the price in line with the going rate for staves. The location of the timber tracts was of no significance to Bryant Co. as it was merely desirous of securing staves, and it did not matter where they were obtained. Consequently, the location of the timber was not an element of good will so far as the purchaser, Bryant Co., was concerned. See ; affd. . Good will is purchased and sold so that the purchaser may use it in dealing with customers. The record before us does not indicate that Bryant Co. was in a general market of selling barrel staves or timberlands *179 in competition with others. Particularly is this true with respect to the comparatively limited area encompassed within Taney County, Missouri, which appears to be the only area within which petitioner had a business good will. On the contrary, it is shown that Bryant Co. had its own customer, namely, National Distillers Products Corporation, for all the staves it produced. The transaction before us merely concerned the sale of two items of inventoried property and not a going business concern. There was no list of customers furnished Bryant Co. nor any indication of any of the elements making up good will. The parties have stipulated that there is no issue in regard to the sale of the mill and equipment, the gain from which was reported and taxed as a long-term capital gain. In view of what we have said above, if any good will was sold, it was sold in connection with the sale of the mill and equipment, and no controversy is presented here with respect to that transaction. We, therefore, conclude that the profit on the sale of the timber rights and timber did not arise from the sale of good will. Such profit, therefore, was ordinary income to the petitioner. With respect to petitioner's *180 contention that the amount received as compensation under the employment contract was in fact a reimbursement for good will, the contract provided that petitioner was "to conduct the manufacturing of mill run bourbon white oak staves" and be paid according to the number of staves produced. Good will is not mentioned in the contract. The record discloses that petitioner was an experienced stave man and highly respected as such in the community. Bryant Co. no doubt realized petitioner's ability and was willing to pay him for these outstanding qualifications. But personal ability, knowledge, experience, acquaintanceships, or other personal characteristics, do not constitute good will as an item of property nor do they exist in such form that they could be the subject of a transfer. This principle has been recognized since , and was reiterated in ; ; ; and . As was stated in : "It may be conceded that *181 the petitioner had built up a considerable clientele and business acquaintanceship and that this clientele followed him, to a large extent, during his various business enterprises. But this personal following does not constitute good will within the generally accepted meaning of the term. * * *" We conclude that no part of the amount received under the employment contract was from the sale of good will and that the entire amount received is taxable as ordinary income. Decision will be entered for the respondent. Footnotes
1. REGULATIONS 111, Sec. 29.22(a)-10. Sale of Good Will. - Gain or loss from a sale of good will results only when the business, or a part of it, to which the good will attaches is sold, in which case the gain or loss will be determined by comparing the sale price with the cost or other basis of the assets, including good will. * * * If specific payment was not made for good will, there can be no deductible loss with respect thereto, but gain may be realized from the sale of good will built up through expenditures which have been currently deducted. It is immaterial that good will may never have been carried on the books as an asset, but the burden of proof is on the taxpayer to establish the cost or other basis of good will sold.↩